IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE: )
)
BRADLEY LLOYD NOLL, and ) Case No. 14-21453-RDB
CRISTIN CORTNEY NOLL, ) Chapter 7
)
Debtors. )
_____ )

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: Denison State Bank

2. Amount of the debt subject to this reaffirmation agreement:
   $105,594.96 on the date of bankruptcy; $105,594.96 as of June 18, 2014 to be paid under the reaffirmation agreement pursuant to the terms of the loan documents.

3. Annual percentage rate of interest: 5.00 % prior to bankruptcy; 5.00 % under the reaffirmation agreement ( ___ Fixed Rate  X  Adjustable Rate)

4. Repayment terms: Subject to the terms and conditions set forth in the attached loan documents.

5. Collateral, if any, securing the debt: Current market value: $155,000.00 as estimated by debtors.
   Description: The dwelling and real property located at 25752 Limit Rd., Winchester, KS 66097.

6. Does the creditor assert that the debt is nondischargeable? ___Yes  X  No
   (If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

**Debtors' Schedule I and J Entries**

7A. Total monthly income from $5,433.06
    Schedule I, line 12

8A. Total monthly expenses $5,373.00
    from Schedule J, line 22

9A. Total monthly payments on $0.00
    reaffirmed debts not listed on
    Schedule J

**Debtors' Income and Expenses as Stated on Reaffirmation Agreement**

7B. Monthly income from all $5,833.06
    sources after payroll deductions

8B. Monthly expenses $5,373.00

9B. Total monthly payments on $0.00
    reaffirmed debts not included in
    monthly expenses

10B. Net monthly income $460.06
    (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.)

11. Explain with specificity any difference between the income amounts (7A and 7B):
Bradley Noll's income has gone up slightly.

12. Explain with specificity any difference between the expense amounts (8A and 8B):
None

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

_____   _____
**Bradley Lloyd Noll**          **Cristin Cortney Noll**
Signature of Debtor (only required if    Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)              required if line 11 or 12 is completed)

**Other Information**

☐  Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
__X__Yes             _____No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?

__X__Yes             _____No

## FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_____
Erin A. Beckerman, #25147
Attorney for Denison State Bank
Print/Type Name & Signer's Relation to Case

> Check One
> ☐ Presumption of Undue Hardship
> ☒ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# United States Bankruptcy Court
## District of Kansas (Kansas City)

In re: BRADLEY LLOYD NOLL, and  Case No. 14-21453-RDB
CRISTIN CORTNEY NOLL,  Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor: DENISON STATE BANK**

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Loan No. **307 (loan documents are attached).

B. *AMOUNT REAFFIRMED*: $105,594.96 as of June 18, 2014, plus all fees and costs, including Denison State Bank's reasonable attorneys' fees, as provided in the loan documents.

> The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is <u>5.00%</u>.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☐ Fixed rate    ☒ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐     $ _____ per month for ___ months starting on _____.

☒     Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount:

        **Currently the monthly payment is $950.52 per month until paid in full, subject to changes for escrow of insurance and taxes, as well as interest, all pursuant to the terms of the loan documents. If on May 11, 2030, amounts are still owed under the note, borrowers (debtors) agree to pay those amounts in full on that date.**

E. Describe the collateral, if any, securing the debt:

     Description:             The dwelling and real property located at 25752 Limit Rd., Winchester, KS 66097.
     Current Market Value    $155,000.00 (per debtors' schedule)

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☒ Yes. What was the purchase price for the collateral?     $120,000.00

☐ No. What was the amount of the original loan?     $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $105,594.96 | $105,594.96 as of 6/18/2014 |
| Annual Percentage Rate | 5.00% | 5.00% |
| Monthly Payment | $950.52 | $950.52 (subject to change per loan documents) |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

_____

# PART II. DEBTORS' STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one.        ☒ Yes        ☐ No

B. Is the creditor a credit union?

   Check one.        ☐ Yes        ☒ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

   1. Your present monthly income and expenses are:

      a. Monthly income from all sources after payroll deductions
         (take-home pay plus any other income)                           $ 5,833.06

      b. Monthly expenses (including all reaffirmed debts except
         this one)                                                       $ 4,422.48

      c. Amount available to pay this reaffirmed debt (subtract b. from a.)   $ 1,410.58

      d. Amount of monthly payment required for this reaffirmed debt    $ 950.52

*If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

   2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

      Check one of the two statements below, if applicable:

      ☒ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

      ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

      _____

      Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

> ☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 12-1-14  Signature _____
Bradley Lloyd Noll

Date 12/1/14  Signature _____
Cristin Cortney Noll

**Reaffirmation Agreement Terms Accepted by Creditor:**

Denison State Bank     421 New York Street, P.O. Box 71, Holton, KS 66436

William T. Nichols     _____     12/18/14
*Name of Representative*    William T. Nichols, General Counsel   Date

## PART IV. CERTIFICATION BY DEBTORS' ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent

of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a CreditUnion.*

Date  12-1-14       Signature of Debtors' Attorney ___/s/ Patrick E. Henderson___
                                                     Patrick E. Henderson

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)
Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

    a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

        i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

        ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

    b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you

negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# ADJUSTABLE RATE NOTE 307

NOTICE TO BORROWER: THIS NOTE CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

..........05-06-2010.......... ..........HOLTON.......... ..........KANSAS..........
[Date]               [City]               [State]

..........25752 LIMIT ROAD, WINCHESTER, KS 66097..........
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 120,000.00.......... (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is DENISON STATE BANK, ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF KANSAS..........

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST    INTEREST BEGINS ACCRUING ON MAY 11, 2010

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of ..........5.550%. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(C) of this Note. Interest will be calculated on a ACTUAL/365.......... basis.

## 3. PAYMENTS

### (A) Periodic Payments

I will pay principal and interest by making periodic payments when scheduled: (mark one)

☐ I will make my periodic payments on the first day of each month beginning on .......... .

☒ I will make periodic payments as follows:

240 MONTHLY PAYMENTS OF $829.23 BEGINNING 06-11-2010. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS MAY CHANGE AFTER THE 36TH PAYMENT AND EVERY 36TH PAYMENT THEREAFTER.

☐ In addition to the payments described above, I will pay a "Balloon Payment" of $ .......... on .......... . The Note Holder will deliver or mail to me notice prior to maturity that the Balloon Payment is due. This notice will state the Balloon Payment amount and the date that it is due.

### (B) Maturity Date and Place of Payments

I will make these payments as scheduled until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

Each periodic payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 05-11-2030.........., I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my periodic payments at 421 NEW YORK STREET, HOLTON, KS 66436-0071..........
.......... or at a different place if required by the Note Holder.

### (C) Amount of My Initial Periodic Payments

Each of my initial periodic payments will be in the amount of U.S. $ 829.23.......... . This amount may change.

Adjustable Rate Mortgage Note
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

Initials: _____

ADJ-NOTE 2/15/2007
VMPC101 (0702).00
Page 1 of 5

Case 14-21453    Doc# 54    Filed 12/18/14    Page 11 of 20

(D) Periodic Payment Changes

Changes in my periodic payments will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my periodic payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND PERIODIC PAYMENT CHANGES

(A) Change Dates

Each date on which my interest rate could change is called a "Change Date." (Mark one)

☐ The interest rate I will pay may change on the first day of ................................................ and on that day every ................................................ month thereafter.

☒ The interest rate I will pay may change .05-11-2013................................................ and on every .36TH PAYMENT................................................ thereafter.

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is: FEDERAL HOME LOAN.... MORTGAGE COMPANY RATE................................................................................................................................

................................................................................................................................

................................................................................................................................

The most recent Index figure available as of the date ☐ 45 days ☒ .30 DAYS PRIOR TO RATE CHANGE DATE................ before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by .ADDING 800/1000................................ ................................ percentage points (...................0.800 %) to the Current Index. The result of this calculation:

☒ will not be rounded off.
☐ will be rounded off by the Note Holder to the nearest ................................ %.
☐ will be rounded off by the Note Holder up to the nearest ................................ %.
☐ will be rounded off by the Note Holder down to the nearest ................................ %.

Subject to the limitations stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the periodic payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my periodic payment.

However, if I have agreed to pay a Balloon Payment in Section 3(A), then the Note Holder will determine the amount of the periodic payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments, except for my final balloon payment, which shall remain the same as it was prior to the Change Date.

(D) Limits on Interest Rate Changes

☒ My interest rate will never be increased or decreased on any single Change Date by more than .THREE................ percentage points from the rate of interest I have been paying for the preceding period.

☒ My interest rate will never be greater than ................10.550% or less than ....................5.000%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new periodic payment beginning on the first periodic payment date after the Change Date until the amount of my periodic payment changes again.

(F) Notice of Changes

At least 25 days, but no more than 120 days, before the effective date of any payment change, the Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my periodic payment. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the periodic payments due under this Note.

Adjustable Rate Mortgage Note
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

ADJ-NOTE 2/15/2007
VMPC101 (0702).00
Initials: _____ Page 2 of 5

Case 14-21453   Doc# 54   Filed 12/18/14   Page 12 of 20

I may make a full Prepayment ... partial Prepayments without paying any Prep... .nent charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my periodic payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my periodic payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of my note.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any periodic payment by the end of .15.................... calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ☒ ............4.000% of my overdue payment of principal and interest. ☐ ...........................................................................................
..............................................................................................................................................................................
I will pay this late charge promptly but only once on each late payment.

### (B) Set-Off

I agree that the Note Holder may set off any amount due and payable under this Note against any right I have to receive money from the Note Holder. An amount due and payable under this Note is any portion of a periodic payment not paid on or before its due date, even if the due date of the Note has not been accelerated.

My right to receive money from the Note Holder includes any deposit account balance I have with the Note Holder (including savings, checking, and NOW accounts), any time deposit (including certificates of deposit), any money owed to me on an item presented to the Note Holder or in the Note Holder's possession for collection or exchange, and any repurchase agreement or other non-deposit obligation.

If my right to receive money from the Note Holder is also owned by someone who has not agreed to pay this Note, the Note Holder's right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. The Note Holder's right of set-off does not apply to an account or other obligation where my rights are only as a fiduciary. It also does not apply to any IRA account or other tax-deferred retirement account.

The Note Holder will not be liable for the dishonor of any check when the dishonor occurs because the Note Holder set off this debt against any of my accounts. I agree to hold the Note Holder harmless from any claims arising as a result of the exercise of the right of set-off.

### (C) Default

If I do not pay the full amount of each periodic payment on the date it is due, I will be in default.

### (D) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (E) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full or does not exercise the right of set-off as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Adjustable Rate Mortgage Note
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

ADJ-NOTE 2/15/2007
VMPC101 (0702).00
Initials: _____ Page 3 of 5

(F) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(B) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated 05-06-2010........................., protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Secured Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Adjustable Rate Mortgage Note
VMP® Bankers SystemsTM
Wolters Kluwer Financial Services © 1985, 2007

ADJ-NOTE 2/15/2007
VMPC101 (0702).00
Initials: _____ Page 4 of 5

## 12. BALLOON PAYMENT DISCLOSURE

[Complete the Balloon Payment notice below if this Note provides for a Balloon Payment at Section 3(A) on page 1 of this Note.]

THIS LOAN IS PAYABLE IN FULL ............................................................................................................
.................................................................................................................................................. I MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE, WHICH MAY BE A LARGE PAYMENT. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. I WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT I MAY OWN, OR I WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER I HAVE THIS LOAN WITH, WILLING TO LEND ME THE MONEY. IF I REFINANCE THIS LOAN AT MATURITY, I MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF I OBTAIN REFINANCING FROM THE SAME LENDER.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

........................................................................................................ (Seal)
BRADLEY L. NOLL                                                                                                -Borrower

........................................................................................................ (Seal)
CRISTIN C. NOLL                                                                                                -Borrower

*[Sign Original Only]*

Adjustable Rate Mortgage Note
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

Initials: _____

ADJ-NOTE 2/15/2007
VMPC101 (0702).00
Page 5 of 5

Case 14-21453    Doc# 54    Filed 12/18/14    Page 15 of 20


Doc #: 2010R03765
STACY R. DRISCOLL/REGISTER OF DEEDS
LEAVENWORTH COUNTY
RECORDED ON
05/14/2010      02:51PM
RECORDING FEE:     24.00
MTG REG TAX FEE: 312.00
INDEBTEDNESS:  120000.00
PAGES:   5

Return To: DENISON STATE BANK
3675 74TH ST., HWY. K-4; P.O. BOX 288 MERIDEN, KS 66512
Prepared By: DENISON STATE BANK
421 NEW YORK STREET P.O. BOX 71 HOLTON, KS 66436-0071

———————State of Kansas——————————————Space Above This Line For Recording Data ———————

# MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is 05-06-2010............ and the parties, their addresses and tax identification numbers, if required, are as follows:
   MORTGAGOR:
   BRADLEY L. NOLL AND CRISTIN C. NOLL, AS HUSBAND AND WIFE
   25752 LIMIT ROAD
   WINCHESTER, KS 66097

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

   LENDER:
   DENISON STATE BANK
   ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF KANSAS
   421 NEW YORK STREET P.O. BOX 71 HOLTON, KS 66436-0071

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, mortgages and warrants to Lender the following described property:

   A TRACT OF LAND IN THE WEST ½ OF THE SOUTHWEST ¼ OF SECTION 3, TOWNSHIP 9 SOUTH, RANGE 20 EAST OF THE 6TH P.M., LEAVENWORTH COUNTY, KANSAS, MORE FULLY DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF THE WEST ½ OF SAID SOUTHWEST ¼; THENCE NORTH A DISTANCE OF 660.00 FEET ALONG THE EAST LINE OF SAID WEST ½; THENCE WEST A DISTANCE OF 660.00 FEET PARALLEL TO THE SOUTH LINE OF SAID SOUTHWEST ¼; THENCE SOUTH A DISTANCE OF 660.00 FEET TO SAID SOUTH LINE; THENCE EAST A DISTANCE OF 660.00 FEET ALONG SAID SOUTH LINE TO THE POINT OF BEGINNING

   The property is located in LEAVENWORTH.......................... at .....25752 LIMIT ROAD...................
   (County)
   ..................................., WINCHESTER............................, Kansas .66097..............
   (Address)                      (City)                               (ZIP Code)

   Assured Title Co.
   312.00
   24.00

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 120,000.00........................................ . This limitation of amount does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument. The limitation is for the purposes set forth in K.S.A. § 9-1101, § 58-2336 and § 79-3102.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

   NOTE DATED 5-6-10, AND ALL EXTENSIONS AND RENEWALS THEREOF

KANSAS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)       *(page 1 of 5)*
Experi® ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 12/1/2003

Case 14-21453    Doc# 54    Filed 12/18/14    Page 16 of 20

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced or such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the Security Instrument. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, mortgage and warrant the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

    A. To make all payments when due and to perform or comply with all covenants.

    B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

    Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

    Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if Lender has a good faith belief that the prospect of any payment, performance or the value of the Property is significantly impaired.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all reasonable costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount includes, but is not limited to, collection agency fees or attorneys' fees and other legal costs and expenses up to 15% of the unpaid amount due and payable, for all persons other than salaried employees of Lender. Lender is entitled to the collection of attorneys' fees or collection agency fees, but not both. This Security Instrument shall remain in effect until released.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

    Mortgagor represents, warrants and agrees that:
    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

Exᴘᴇʀᴇ˜ ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 12/1/2003

*(page 4 of 5)*

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
       ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ..........................
    ☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

*(Signature)* BRADLEY L. NOLL    5/6/10    *(Signature)* CRISTIN C. NOLL    5/6/10
                                 (Date)                                      (Date)

**ACKNOWLEDGMENT:**

(Individual)   STATE OF .KANSAS............, COUNTY OF .JEFFERSON............} ss.
This instrument was acknowledged before me this .6TH..... day of .MAY, 2010.........
by .BRADLEY L. NOLL; CRISTIN C. NOLL, AS HUSBAND AND WIFE...........................
My commission expires:    Chad Beisel
April 17, 2013                         (Notary Public)

NOTARY PUBLIC, State of Kansas
CHAD BEISEL
My Appt. Exp. 4/17/13

Expere® ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 12/1/2003    (page 5 of 5)